**KENTUCKY BELL CORP. v. STEWART.**
No. 489.

United States District Court,
E. D. Kentucky, London.
March 20, 1950.

984

R. R. Boone, Pineville, Ky., for plaintiff.

James S. Wilson, Logan E. Patterson, Pineville, Ky., for defendant.

FORD, Chief Judge.

This cause came on for trial and the Court, having heard the evidence and considered the record, finds the facts and states the conclusions of law as follows;

#### Findings of Fact.

1. All claims of both plaintiff and defendant derive from a common source of record title, to wit: Robert E. Adams and James H. Adams, brothers.

2. Plaintiff's claim of title is based upon a deed to it from said Adams brothers, dated March 26, 1948, and recorded April 15, 1948, which contains a provision that the "conveyance is made subject to * * * the right of way granted to Bell County, Kentucky for the old road between Pineville and Barbourville; the right of way granted to the Commonwealth of Kentucky for the new road now known as U. S. 25 E between Pineville and Barbourville, Kentucky * * *."

3. Plaintiff's said deed also contains the following reservation; "The parties of the first part hereby reserve to themselves, their heirs and assigns, all coal, oil, gas and minerals of every kind and character in, on or under the surface, with right to enter on the above described property and mine, strip, excavate, drill, pump, quarry, or otherwise remove same with any and all machinery, appliances, fixtures and things necessary and convenient therefor, together with such rights of ingress and egress as the parties of the first part, their heirs and assigns, may desire."

4. The property conveyed by the Adams brothers to plaintiff embraced approximately fifty-six acres of a boundary totalling about a thousand acres then owned by the Adams brothers, the principal value of which was the natural resources thereon and thereunder, coal being the chief such resource presently known, and the only such resource then and now being exploited.

5. The fifty-six acre boundary conveyed by the Adams brothers to plaintiff included all of the land then owned by them in fee whereby their 1,000-acre tract fronted upon any improved or paved highway, and also included a section of the only railroad available to, or abutting on, the 1,000-acre tract.

6. June 7, 1947, the Adams brothers leased to Lon Lewis and Charles H. Hoskins, for coal mining purposes, a part of their 1,000-acre tract which embraced, inter alia, all the boundary subsequently conveyed to plaintiff, and which lease contained the following: "Lessor grants unto Lessee the right to enter upon said premises hereinabove described and the right to dig, mine and remove the aforesaid coal therefrom, together with all rights, privileges, licenses and easements necessary or incident to the mining and removing of said coal, and also the right of way for necessary road and railroads over and under said premises, and the right to use said roads, railroads, entries and openings on said premises for the purpose of transportation of said coal therefrom, and the right to occupy as much of the surface of the said premises as may be reasonably necessary for storing coal thereon and depositing the refuse therefrom, and the right to erect on said premises such buildings, structures, and fixtures as may be necessary or incident to the proper mining and removing of said coal, but no houses for miners or others shall be erected or maintained on said premises."

7. The above lease and supplements and amendments of September 10, 1947, No-

vember 21, 1947, and July 20, 1948, were transferred on April 29, 1949, to Blue Grass Minerals, a Kentucky corporation, which corporation, in turn, authorized defendant to erect and maintain the structure which is the subject of this litigation.

8. The structure which is the subject of this litigation is anchored at one end upon land belonging to defendant, at the other upon land belonging to the Kentucky Utilities Company, and except to the extent located upon lands of Kentucky Utilities Company, is wholly located upon the leased boundary mentioned in items 6 and 7, above.

9. The belt conveyor, or aerial tram, which is the subject of this litigation, is largely of metal and concrete construction, is supported upon steel piers and concrete foundations, and is an improvement of a fixed and permanent character, the cost of which exceeded $200,000.

10. February 2, 1939, the Adams brothers conveyed to the Commonwealth of Kentucky, for the purpose of constructing and maintaining a highway, a strip of land which embraces much of the land in controversy in this action. The highway was duly constructed, still exists, and is that U. S. 25 E between Pineville and Barbourville referred to in plaintiff's deed, quoted in item 2, above.

11. The structure in controversy actually touches or rests upon the land claimed by plaintiff at only one point. At this point is a concrete pier foundation which helps support the structure, and which is wholly located upon a part of that land conveyed to the Commonwealth of Kentucky by the Adams deed of February 2, 1939, referred to in item 10, above.

12. All of the structure which occupies a part of the airspace above the lands claimed by plaintiff, either passes through the air above that land conveyed by the Adams brothers to the Commonwealth of Kentucky on February 2, 1939, or above the waters of Cumberland River, except for that portion which passes through the air above a strip of the river bank at the water's edge, stated by plaintiff's witness to be about sixteen feet in width at the time measurements were taken by him.

13. The bottom of the structure is approximately seventy feet above the water's edge, and the ground beneath the structure slopes from the shoulder of the road down to the water's edge at an angle of sixteen and one-half degrees.

14. The Commonwealth of Kentucky, through its Department of Highways, has authorized defendant to erect and maintain the structure in controversy upon the lands conveyed to the Commonwealth of Kentucky as set out in item 10, above. Defendant originally applied for such authority on September 7, 1948.

15. As to all that land claimed by plaintiff which is material to a determination of this action, the Adams brothers conveyed to defendant, on June 30, 1949, all of the property, rights, and privileges which had been reserved by said Adams brothers in their conveyance to plaintiff, described in item 3, above.

16. The attendant facts and circumstances indicate that, when the Adams brothers conveyed to plaintiff, reserving all minerals, the right to enter, mine, and remove them, and "such rights of ingress and egress as the parties of the first part, their heirs and assigns, may desire", it was their purpose and intent that "such rights of ingress and egress" be as broad as the language of the reservation imports, and not that such rights be limited or confined to the exploitation of the boundary described in the deed to plaintiff.

17. Prior to, and at the time of trial, the structure in controversy was being used to transport coal from defendant's land across the river to the electric generating plant of Kentucky Utilities Company, which coal originated in part from the Adams lands leased as set out in items 6 and 7, and in part from the lands of other persons.

Conclusions of Law.

1. Whether literally construed, or construed in the light of attendant circumstances, the reservation in the deed of Robert E. and James H. Adams to plaintiff, dated March 26, 1948, is sufficiently broad to permit the reserving parties, or their assigns, to exercise any reasonable rights of

986

ingress and egress across the lands conveyed which they might desire, including the erection, maintenance, and present use by defendant of the structure in controversy, which is neither illegal, improper, unreasonable, nor oppressive.

2. There is no evidence upon which to base an award of the character sought by plaintiff.

3. If defendant has been guilty of a technical encroachment in the airspace to which plaintiff is entitled, as claimed by plaintiff, that encroachment is of a character justifying the application of the doctrine de minimis non curat lex.

4. The complaint of plaintiff must be dismissed.

5. The relief sought by defendant in his counterclaim should be granted to the extent that plaintiff be enjoined from claiming title to the structure in controversy, and from interfering with defendant's use of same in any reasonable way, including the transportation of coal.

It Is So Ordered, and counsel for defendant will submit appropriate judgment in accordance herewith.